Frank L. ANDERSON, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 2386.

Municipal Court of Appeals for the
District of Columbia.

Argued June 8, 1959.

Decided Oct. 14, 1959.

T. Emmett McKenzie, Washington, D. C.,
for appellant.

Ted D. Kuemmerling, Asst. Corp. Counsel, Washington, D. C., with whom Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellant, a practicing attorney, and one Catherine Petro were found guilty by the court of violating the "Baby Broker Act." [1] The court suspended the imposition of sentence as to each defendant and Anderson appeals. His principal contention is that his conduct was not sufficient to bring him within the statutory prohibition in that his activity was not of such a nature that the trial court could find him acting in an unlawful capacity.

These are the facts: The natural mother wished to place her child for adoption and sought the help of her mother-in-law. The latter called Mr. Petro about it and he told his wife, the codefendant. It appears that some months previously Mrs. Petro had arranged to place a child for adoption with the adopting mother and appellant was retained to handle the details. The adoption did not take place because the child was stillborn. At that time Mrs. Petro was paid $75 by the adopting mother and therefore felt obligated to her. Following the conversation with her husband, Mrs. Petro approached the adopting mother and found her still interested. The adopting mother consulted her husband, and he consented on the condition that the child pass a satisfactory physical examination. At his direction, the adopting mother called

---

1. Code 1951, §§ 32–781 to 32–790 (Supp. VII).

appellant, recited what had happened, and requested him to handle the matter. Appellant agreed and told her he would pick her up at a street corner near her bank. He then called Mrs. Petro and the doctor to arrange for the examination. The adopting mother withdrew $150 from her bank account and met appellant as planned. In his car at that time were his wife, a notary public of the State of Maryland, and Mrs. Petro.

The party went to the home of the natural mother, leaving the adopting mother in the automobile. After some conversation, the child was given to Mrs. Petro and the party drove to the doctor's office. Following a satisfactory examination, they returned to the natural mother's home, again leaving the adopting mother in the car. Appellant presented the natural mother with a paper identified as a "consent to adoption," which she and her husband signed and acknowledged in the presence of appellant's wife, the notary public. The natural mother told appellant she was in financial difficulty and he said, "I'll contact the adopting mother and see what I can do for you." He left the house and a short time later returned with $50, obtained from the adopting mother, which he gave the natural mother remarking, "This is a loan." The adopting mother was then given the child and the parties returned to their respective homes.

During trial appellant was asked why it was necessary to go to the natural mother's home to obtain her signature on the "consent to adoption" when he knew the court would not accept such consent. He replied that he wanted to do it legally and that was the reason he took his wife along.

We feel that appellant's conduct clearly falls within the scope of the statute which provides:

> "Any person, firm, corporation, association, or public agency that receives or accepts a child under sixteen years of age and places or offers to place such child for temporary or permanent care in a family home other than that of a relative within the third degree shall be deemed to be maintaining a child-placing agency. * * *
>
> * * * * * *
>
> "No person other than the parent, guardian, or relative within the third degree, and no firm, corporation, association, or agency, other than a licensed child-placing agency, may place or arrange or assist in placing or arranging for the placement of a child under sixteen years of age in a family home or for adoption. * * *" [2]

According to the statement of proceedings and evidence it was stipulated that appellant did not possess a license which authorized him to place or arrange or assist in placing or arranging for the placement of any child for adoption. It was further stipulated that the doctor who examined the child, if called as a witness, would testify that appellant had called his office and made the necessary arrangements.

This is the second case in which we have been called upon to interpret the statute. We previously said:

> "Congress therefore decreed that commercial agents, baby brokers, and even the best-intentioned citizens serving upon a non-commercial basis and from the most humane motives, must none of them be permitted to place children for adoption unless previously investigated, found qualified, and licensed. This was to protect children and parents not only from corrupt or irresponsible intermediaries but also from the careless and untrained.
>
> "To emphasize that purpose Congress in the plainest language made it unlawful for anyone not licensed to 'place or arrange or assist in placing or arranging for the placement' of a child." [3]

We also stated concerning the limit of a lawyer's activity in this area:

2. Code 1951, §§ 32–782, 32–785 (Supp. VII).

3. Goodman v. District of Columbia, D.C. Mun.App.1947, 50 A.2d 812, 814.

"We think it plain that so long as the lawyer gives only legal advice; so long as he appears in court in adoption proceedings, representing either relinquishing or adopting parents; *so long as he refrains from serving as intermediary, go-between, or placing agent;* so long as he leaves or refers the placement of children and the arrangements for their placement to agencies duly licensed, he is within his rights under the statute. * * *" (Emphasis supplied.)[4]

Nothing further need be said.

Affirmed.